**Harold NORSE, Plaintiff,**

v.

**HENRY HOLT AND COMPANY and Ted Morgan, Defendants.**

No. C–89–3604–CAL.

United States District Court, N.D. California.

Jan. 25, 1994.

Jerome N. Field, Jerome N. Field Inc., A Law Corp., San Francisco, CA, for plaintiff.

Daniel A. Ross, Sharfman, Shanman, Poret, & Siviglia, New York City, Neil Rosenbaum, Kerner Weppner & Rosenbaum, San Francisco, CA, for defendants.

*ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

LEGGE, District Judge.

Defendant Ted Morgan, a biographer, copied excerpts from copyrighted letters written by plaintiff Harold Norse and used them in a biography of author William S. Burroughs entitled *Literary Outlaw: The Life and Times of William S. Burroughs,* published by defendant Holt.

I.

In this action, plaintiff originally alleged defamation, unfair competition, breach of contract, and copyright infringement. This court granted defendants' motion for summary judgment on all of plaintiff's claims, including the copyright claim, in 1991. The Court of Appeals affirmed the dismissal of the defamation, unfair competition, and breach of contract claims, but reversed the judgment on the copyright claim. *Norse v. Henry Holt and Co.,* 991 F.2d 563 (9th Cir. 1993). The Ninth Circuit remanded the copyright claim, in essence for this court to determine whether the quotations from plaintiff's letters constituted a "fair use" under the copyright laws. *Id.* at p. 566–67.

The issue now before this court is whether defendants' use of the excerpts constituted "fair use," as that doctrine has been defined by the copyright statutes and by case law. The Ninth Circuit has applied the fair use doctrine to a variety of cases, but not previously to a biography case. The principle of fair use in the context of a biography therefore requires some special analysis, particularly in light of recent Second Circuit decisions. *See Wright v. Warner Books, Inc.,* 953 F.2d 731 (2d Cir.1991); *Salinger v. Random House, Inc.,* 811 F.2d 90 (2d Cir.1987), *opinion supplemented,* 818 F.2d 252, *cert. denied,* 484 U.S. 890, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987). The Ninth Circuit cited these two cases in its remand of the copyright issue in this case.

## II.

Following remand, defendants have again moved for summary judgment on the copyright cause of action, asserting fair use. The motion was opposed, argued and submitted for decision. The court has read the moving and opposing papers, the record of the case, and the applicable authorities.

"Fair use is a mixed question of law and fact." *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 560, 105 S.Ct. 2218, 2230, 85 L.Ed.2d 588 (1985). "If there are no genuine issues of material fact, or if, even after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as a fair use of the copyrighted work." *Hustler Magazine, Inc. v. Moral Majority, Inc.,* 796 F.2d 1148, 1150–1151 (9th Cir.1986) (citing *Diamond v. Am-Law Publishing Corp.,* 745 F.2d 142, 147 (2d Cir.1984)). "The mere fact that a determination of the fair use question requires an examination of the specific facts of each case does not necessarily mean that in each case involving fair use there are factual issues to be tried." *Wright v. Warner Books, Inc.,* 953 F.2d at 735.

The court concludes that there are no genuine issues of material fact and that summary judgment should be granted to defendants.

## III.

The material facts are not in dispute.

Morgan has published several written works, including biographies of Somerset Maugham, Winston Churchill, and Franklin Roosevelt. In the course of writing *Literary Outlaw,* Morgan contacted Norse. Norse is a poet, a member of the so-called "Beat" generation of writers, and a former colleague of Burroughs. Norse provided Morgan with certain information regarding Burroughs, including two articles and the location of Norse's letters that are at issue in this case. Norse holds a copyright interest in those unpublished letters. Morgan copied from the letters, which were housed at Fales Library of New York University. The letters consist of correspondence written by Norse to one Ira Cohen from February 1963 through August 1970. The entire collection of letters totals over 12,000 words. Morgan used excerpts from five of the letters, totalling about 50 words, in one paragraph of *Literary Outlaw,* at page 394. The paragraph is as follows, with underlining showing the material quoted from the letters:

Harold thought of himself as *"dark-horse Norse,"* ignored and unpublished. He harbored bitter thoughts about his colleagues, whom he thought had more success than he did, while deserving it less. Irving Rosenthal he considered a *monstrous shit, aberrated and power-struck, a diseased faggot clear through.* He didn't trust Brion, whom he called SOBrion—he had to be the *prima donna,* and for all his charm, there was a spurious side. These days *he talked only to Burroughs, who talked only to God, with contempt for all else.* When the Russians announced that they were sending a women into space, Harold was amused to see Brion's and Bill's reaction—they thought it was an ominous threat to carry *the matriarchy, the cunt, the Bitch Goddess, into space.* What new turn, Harold wondered, would this lead to in Bill's work? *Lesbian colonels attacking fish boys on Mars?*

## IV.

The fair use doctrine enables authors, other than the copyright owners, to

reasonably use copyrighted material without the copyright owner's consent. *Hustler Magazine, Inc.*, 796 F.2d at 1151. The copyright laws were created to foster creativity. However, the copyright laws can occasionally have the effect of impeding rather than encouraging creativity. The fair use doctrine was judicially created, and then codified, to "avoid rigid application" of the copyright laws in those instances where the copyright laws impede creativity. *Marcus v. Rowley*, 695 F.2d 1171, 1174 (9th Cir.1983) (citing *Iowa State University v. American Broadcasting*, 621 F.2d 57, 60 (2d Cir.1980)).

▬▬ The fair use doctrine was codified in 17 U.S.C. 107, and provides a "means of balancing the need to provide individuals with sufficient incentives to create public works with the public's interest in the dissemination of information." *Hustler Magazine, Inc.*, 796 F.2d at 1151. Fair use is an equitable defense. *Harper & Row*, 471 U.S. at 560, 105 S.Ct. at 2230. Because the defense of fair use is considered in its totality, the moving party is not required to prevail on every factor defined in 17 U.S.C. § 107, which provides:

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work ... for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.
>
> The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

## V.

The first factor is the purpose and character of the use, and whether the use is of a commercial or non-profit nature. The parties agree that defendants stand to commercially benefit from the biography of Burroughs.

"Every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Harper & Row*, 471 U.S. at 562, 105 S.Ct. at 2231, (quoting *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 451, 104 S.Ct. 774, 793, 78 L.Ed.2d 574 (1984)). However, "the presumption of unfairness that arises in such cases can be rebutted by the characteristics of a particular commercial use." *Sega Enterprises LTD. v. Accolade, Inc.*, 977 F.2d 1510, 1522 (9th Cir.1992) (citing *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1152 (9th Cir.1986)). Moreover "the commercial nature of a use is a matter of degree, not an absolute." *Maxtone–Graham v. Burtchaell*, 803 F.2d 1253, 1262 (2d Cir.1986), *cert. denied*, 481 U.S. 1059, 107 S.Ct. 2201, 95 L.Ed.2d 856 (1986). In *Hustler* the Ninth Circuit held that a parody was a fair use, even though defendants "distributed copies of the parody as an integral part of a financial appeal." 796 F.2d at 1152.

▬▬ The important point here is that the offending work is a *biography*. It is a scholarly biography of a literary figure, and the public benefits from the additional knowledge that Morgan provides about William Burroughs and other writers of the same era. And a biographer must, in order to be accurate, cite and quote things said by the subject and said about him by others. Section 107 expressly defines scholarship as one of the uses eligible for the fair use defense.

Other circuits that have addressed fair use in the context of a biography have held that the first factor favors the use of quotations in a biography, even though the biography was sold commercially. *See Salinger v. Random House, Inc.*, 811 F.2d 90, 96 (2d Cir.1987),

cert. denied, 484 U.S. 890, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987); *Maxtone–Graham v. Burtchaell*, 803 F.2d 1253, 1262 (2d Cir.1986), cert. denied, 481 U.S. 1059, 107 S.Ct. 2201, 95 L.Ed.2d 856 (1987); and *Wright v. Warner Books, Inc.*, 953 F.2d 731, 736 (2d Cir.1991). In *Salinger*, the defendant copied material from unpublished copyrighted letters and journal entries. *Salinger*, 811 F.2d at 96. Defendant used the copyrighted material in a biography that was sold commercially. *Id.* The court held that the biography fit into one of the "statutory categories of uses illustrative of uses that can be fair," and that the first fair use factor weighed in favor of the defendant even though he and the publisher anticipated profits. *Id.* Moreover, there was no attempt to supplant the copyright holder's imminent publication or "exploit the headline value" of the infringement. *Id.;* (quoting *Harper & Row*, 471 U.S. at 561, 105 S.Ct. at 2231).

As in *Sega Enterprises, LTD.*, in the instant case the copying is essentially non-exploitive and the commercial aspect of its use is of minimal significance. Defendants did not use Norse's name to advertise the book or prominently feature the copied material or Norse's name anywhere in the book. The copied material comprises a small portion of a long book.

Likewise, Morgan was not racing Norse to publication or exploiting the headline value of the infringement. Rather, Morgan copied a minimal amount of material from Norse's letters and used it when writing the biography.

### VI.

The second factor is the nature of the copyrighted work. This inquiry is "narrower with respect to unpublished works," because "the author's right to control the first public appearance of his expression weighs against such use of the work before its release." *Harper & Row*, 471 U.S. at 564, 105 S.Ct. at 2232. In the case of unpublished works, courts have concluded: "Where use is made of materials of an 'unpublished nature,' the second fair use factor has yet to be applied in favor of an infringer, and we do not do so here." *New Era Publications International v. Henry Holt & Co.*, 873 F.2d 576, 583 (2d Cir.1989). This factor, although favoring plaintiff, does not preclude the fair use of material copied from unpublished sources. In 17 U.S.C. § 107 Congress explicitly provided that the fair use defense may apply to unpublished work if the fair use finding is made upon consideration of all four factors.

### VII.

The third factor is the amount and substantiality of the portions used. This factor requires a consideration of the amount and substantiality of the quoted material as compared with the copyrighted work, not the infringing work. *Wright*, 953 F.2d at 738. There is both a qualitative and a quantitative aspect to this factor. The inquiry is whether the portion used is a significant percentage of the copyrighted work, and whether the portion used is "essentially the heart" of the copyrighted work. *Id.*

Quantitatively, the copied material comprises a very small percentage of the letters. In *Wright*, the court found that the copied material was not quantitatively significant where it comprised only about 1% of the letters, even though one of the quotes was about 55 words long. *Id.* On the other hand, in *Salinger* the court held that the copied material was quantitatively significant because defendant copied one third of 17 letters and at least 10% of 42 letters. *Salinger*, 811 F.2d at 98. In the present case, only about 50 of 12,000 words were copied. The amount copied is not quantitatively significant.

Qualitatively, even a small taking may be actionable if they are "the heart of the book". *See Harper & Row*, 471 U.S. at 565, 105 S.Ct. at 2233. Plaintiff here does not argue how the copied material goes to the "heart" of the copyrighted work or present a factual dispute. The copied material does not constitute the "heart" of any individual letter or the letters as a whole. This court concludes that no reasonable juror could conclude that the copied material goes to the "heart," if one can even be identified, of the copyrighted letters. Morgan did not copy a significant portion of the letters, and the

portion he did copy was not the "heart" of any letter.

### VIII.

■ The Supreme Court has characterized the fourth factor, the effect of the use on the potential market, as "undoubtedly the single most important element of fair use." *Harper & Row,* 471 U.S. at 566, 105 S.Ct. at 2233. Fair use requires that the copying not materially impair the marketability of the copied works. *Id.* at 566–567, 105 S.Ct. at 2234.

In *Harper & Row* the Court in part denied fair use because it found that the defendant had copied the material with the intent to be the first to publish portions of the president's memoirs. *Id.* at 567, 105 S.Ct. at 2234. Similarly, in *Salinger,* plaintiff's literary agent estimated that the letters had a current value of $500,000. *Salinger,* 811 F.2d at 99. Even though Salinger disavowed any intent to publish the letters, the court thought it important to protect his right to do so. *Id.* Moreover, the court opined that the biographer had copied the most interesting and meaningful passages of the letters, depriving them of at least some commercial value. *Id.*

In contrast, in *Wright* the court found that only marginal amounts of Wright's works were copied and used in a small, unfeatured portion of the biography. *Wright,* 953 F.2d at 739. Further, the court found that "the biography in no way supplant[ed] Wright's letters and journals." *Id.*

■ The instant case is analogous to *Wright* and distinguishable from *Salinger* and *Harper & Row.* Only small portions of plaintiff's letters were copied and used in an unfeatured portion of the biography. If there is a market for Norse's letters, Morgan's use of the copied material in no way supplants that market. Plaintiff submitted declarations which claim that unpublished letters generally have a greater commercial value and potential market than published letters. But neither declaration addresses the market impact resulting from defendants' fragmentary copying here. In contrast to *Salinger* and *Harper & Row,* plaintiff has provided no evidence of a valuable market, particularly in light of the sparsity and con-tent of the copied material. It is difficult to imagine a scenario where Morgan's biography of Burroughs could adversely affect the value of Norse's rights in the publication of his own letters.

### IX.

■ Bad faith can bar the fair use defense. *Fisher v. Dees,* 794 F.2d 432, 437 (9th Cir.1986). Plaintiff attempts to create a factual issue regarding bad faith by arguing: (1) an alleged dispute as to whether Morgan heard of the existence of the letters from Norse, (2) whether Morgan knew that Norse was published, and 3) whether Morgan promised to promote Norse's forthcoming autobiography *"Memoirs of a Bastard Angel."*

■ Norse's arguments, even if presumed in his favor, do not constitute bad faith or affect any genuine material issue of fact on fair use. Morgan copied Norse's letters to Ira Cohen, kept at Fales Library of New York University, a public library. In the context of fair use, it is not material how Morgan first learned where the publicly available letters were located. The circuit has already rejected Norse's "not published" argument; *Norse,* 991 F.2d at 567. Further, this court and the Ninth Circuit previously held that Morgan was not contractually bound to promote Norse's autobiography. *Id.* at 568. Morgan's actions do not amount to bad faith precluding the fair use defense.

### X.

There are no genuine material facts in dispute relevant to the fair use doctrine. Three of the four defined fair use factors favor defendants. Only the second factor, the unpublished nature of plaintiff's letters, favors plaintiff, and Congress has expressly provided that copying of unpublished work may still be a fair use when all of the factors are considered.

In summary, defendant's book is a biography and biography requires research into things said by and about the subject. Morgan's biography is a scholarly work about a literary figure. The public will benefit from the additional knowledge Morgan provides on William Burroughs and his generation of

writers. Morgan copied only about 50 words from plaintiff's letters, and the copied fragments are not the "heart" of even one letter. Morgan's use of the copied material in no way affected the marketability or value of plaintiff's unpublished letters.

Defendants' motion for summary judgment is granted, and plaintiff's copyright claim is dismissed.

IT IS SO ORDERED.