**Edward R. BELMORE, Plaintiff,**

v.

**CITY PAGES, INC., Defendant.**

Civ. No. 3–94–604.

United States District Court,
D. Minnesota,
Third Division.

Jan. 17, 1995.

Ann E. Walther, Gregg G. Corwin & Associates, St. Louis Park, MN, for plaintiff.

Mark R. Anfinson, Minneapolis, MN, for defendant.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Plaintiff Edward R. Belmore ("Belmore") commenced this action against Defendant City Pages, Inc. ("City Pages") alleging copyright infringement, misappropriation and conversion. Belmore seeks monetary damages and injunctive relief. This matter is currently before the Court on City Pages' Motion for Summary Judgment. For the reasons set forth below, the Court will grant that Motion.

### Background

Belmore is a resident of Wyoming, Minnesota, and is employed by the city of Minneapolis as a police officer. He has served as a Minneapolis police officer at all times relevant to this action.

City Pages is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. City Pages publishes a local weekly newspaper entitled "City Pages."

The relevant facts in this case are not disputed by the parties. Belmore is a member of the Police Officers' Federation of Minneapolis ("Police Federation"). The Police Federation issues a monthly newspaper entitled "Show–Up." Belmore wrote a short article entitled "Tale of Two Islands." This article appeared in the September 1993 issue of "Show–Up." (*See* App. A.) "Tale of Two Islands" is written in the form of a fable.

On October 13, 1993, City Pages published "Tale of Two Islands" without Belmore's permission. "Tale of Two Islands" appeared in an article written by "City Pages" editor Steve Perry ("Perry") entitled "Hooligan's Island," with the subheading "Bedtime stories backed by Smith & Wesson." "Hooligan's Island" consists of an introductory commentary, the "Tale of Two Islands" reprinted in its entirety, and a follow-up commentary. (*See* App. B.) Perry contends that he reprinted "Tale of Two Islands" because he felt it was racist and inappropriate material for a Police Federation publication. (Perry Aff. ¶¶ 3–4.)

On November 23, 1993, Belmore applied for and received a certificate of copyright registration for "Tale of Two Islands" from the United States Patent Office. (Compl. Ex. C.) On May 13, 1994, Belmore commenced this action against City Pages.

Jurisdiction in this Court is based upon 28 U.S.C. §§ 1331 and 1338.

### Discussion

#### I. Standard of Decision

▇ Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Under that Rule:

> [summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

 Initially, the movant bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In evaluating the movant's showing, the evidence offered by the non-moving party is to be believed and all justifiable inferences therefrom are to be drawn in a light most favorable to that party. *Matsushita Elec. Indus. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986); *Liberty,* 477 U.S. at 255, 106 S.Ct. at 2513; *Trnka v. Elanco Prod.,* 709 F.2d 1223, 1225 (8th Cir. 1983). Where a moving party, with whatever it provides the court, makes and supports a motion for summary judgment in accordance with Rule 56, a party opposing the motion may not rest upon the allegations or denials of its pleadings; rather, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. at 2514; *Fischer v. NWA, Inc.,* 883 F.2d 594, 599 (8th Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990). However, the nonmovant is not obligated to prove in its favor an issue of material fact. *Unigroup v. O'Rourke Storage & Transfer,* 980 F.2d 1217, 1220 (8th Cir.1992) (citations omitted).

 Ordinarily, the Court's task on a motion for summary judgment is not to weigh facts or evaluate the credibility of affidavits and other evidence. Rather, the Court need only determine whether the record, as identified by the parties, shows the existence of a real controversy over a material issue, such that the controversy must be resolved by the finder of fact at trial. *Agri-Stor Leasing v. Farrow,* 826 F.2d 732, 733 (8th Cir.1987). However, the nonmovant cannot avoid summary judgment in favor of the movant merely by pointing to some alleged factual dispute between the parties. Instead, any fact alleged to be in dispute must be "outcome determinative under prevailing law," that is, it must be material to an essential element of the specific theory of recovery at issue. *See Get Away Club, Inc. v. Coleman,* 969 F.2d 664, 666 (8th Cir.1992) (citation omitted).

## II. Analysis

 Belmore claims that by reprinting "Tale of Two Islands" without his permission, City Pages infringed upon his copyright in violation of 17 U.S.C. § 501.[1] City Pages claims that it did not infringe upon Belmore's copyright because (1) its republication of "Tale of Two Islands" was permitted under the "fair use" provision of the Copyright Act, 17 U.S.C. § 107, and (2) Belmore abandoned or waived his copyright claim by failing to affix a copyright notice to "Tale of Two Islands" when it appeared in the September 13, 1993 issue of "Show–Up."

### A. Fair Use

 The fair use doctrine is an affirmative defense to a copyright infringement action. It confers a privilege to use copyrighted material in a reasonable manner without the owner's consent. *Hustler Magazine, Inc. v. Moral Majority,* 796 F.2d 1148, 1151 (9th Cir.1986). This doctrine is "a means of balancing the need to provide individuals with

---

1. In his Complaint, Belmore also alleges common law claims for misappropriation and conversion. Belmore bases these claims solely on the fact that City Pages copied "Tale of Two Islands" without his permission. (Compl. ¶¶ 16–20.) The Copyright Act provides the exclusive remedy for unauthorized copying and preempts equivalent rights conferred under the common law. *See* 17 U.S.C. § 301; *National Car Rental System, Inc. v. Computer Assoc. Int'l, Inc.,* 991 F.2d 426, 430–31 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 176, 126 L.Ed.2d 136 (1994). As a result, Belmore's common law claims are preempted by the Copyright Act. Following oral argument, Belmore conceded that his common law claims should be dismissed if the Court grants City Pages' Motion for Summary Judgment. Based on 17 U.S.C. § 301, however, the Court finds that Belmore's common law claims are preempted irrespective of the Court's ruling on City Pages' Summary Judgment Motion.

sufficient incentives to create public works with the public's interest in the dissemination of information." *Id.* The fair use doctrine is codified at 17 U.S.C. § 107, which provides:

Limitations on exclusive rights: Fair use

Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonerecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

The United States Supreme Court recently considered the scope of the fair use doctrine in *Campbell v. Acuff–Rose Music, Inc.,* —— U.S. ——, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994) (reversing the Sixth Circuit's [2] finding that a parody of a copyrighted song was not a "fair use" under § 107). In *Campbell,* the Court explained that there are no "bright line" rules for applying § 107, and that courts should tailor the fair use analysis to the specific facts presented in each case. *Id.* at ——, 114 S.Ct. at 1170; *see* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright,* § 13.05[A] at 13–188 (1994). The Court also explained that no single fair use factor is dispositive, and that all four factors must be considered in light of the purposes of copyright. *Id.* at —— – ——, 114 S.Ct. at 1170–71.

Whether a use qualifies as a permissible fair use under § 107 is a mixed question of law and fact. *Harper & Row Publishers v. Nation Enterprises,* 471 U.S. 539, 560, 105 S.Ct. 2218, 2230, 85 L.Ed.2d 588 (1985). If, after applying the four factors, there are no material factual disputes, fair use may be resolved on summary judgment. *Hustler,* 796 F.2d at 1151; *see also Wright v. Warner Books, Inc.,* 953 F.2d 731 (2nd Cir. 1991) (noting that summary disposition of copyright holder's claims is proper when fair use defense presents no material factual disputes); *Consumers Union of U.S., Inc. v. New Regina Corp.,* 664 F.Supp. 753, 759 (S.D.N.Y.1987) (explaining that "when parties do not dispute the relevant historical facts underlying each of the [fair use] factors, courts have not hesitated to grant summary judgment on the basis of the fair use defense").

### 1. Purpose and Character of Defendant's Use

The first factor in a fair use inquiry is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107. Belmore contends that because City Pages is a for-profit corporation, its use of "Tale of Two Islands" is presumptively unfair.

The Supreme Court has explicitly rejected using the presumption Belmore proffers. *Campbell,* —— U.S. at ——, 114 S.Ct. at 1174. (stating that "[i]f, indeed, commerciality carried presumptive force against a finding of fairness, the presumption would swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting, comment, criticism …" since these are typically done for profit). Instead, the Supreme Court explained that the inquiry under the first prong is "guided by the examples given in the preamble to § 107, looking to whether the use is for criticism, or comment, or news reporting, and the like." *Id.* at ——, 114 S.Ct. at 1171; *see also* 3 *Nimmer on Copyright,* § 13.05[B] at 13–210 (observing that "[t]he defense of fair use is most universally recognized in connecting

**2.** The Sixth Circuit's decision is reported at 972 F.2d 1429 (6th Cir.1992).

with the function of criticism and review") (citing cases). The Supreme Court further explained that the "central purpose" of this inquiry is to determine whether the new work "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Id.*

In light of the principles set forth in *Campbell,* the first factor in the fair use analysis weighs in favor of City Pages. City Pages clearly did not present "Tale of Two Islands" as its own product, nor was it seeking to trade on its attractiveness to readers.[3] Instead, City Pages reprinted "Tale of Two Islands" to criticize it and the Minneapolis Police Department.[4] The Court takes no view on whether such criticism is warranted. It is clear, however, that the purpose of "Hooligan's Island" fits squarely within the criticism, comment or news reporting uses specifically endorsed in § 107.

### 2. Nature of the Copyrighted Work

The second factor in the § 107 analysis considers the nature of the copyrighted work. This factor recognizes that some types of works are closer to the core of intended copyright protection than others, and as a result the scope of the fair use exception is broader for informational works than for creative works. *Harper & Row Publishers v. Nation Enterprises,* 471 U.S. 539, 563–64, 105 S.Ct. 2218, 2232, 85 L.Ed.2d 588 (1985). "Tale of Two Islands" is clearly a creative work, and as such is entitled to greater protection than that afforded to purely informational works. As a result, this factor weighs in Belmore's favor.

### 3. Amount and Substantiality of the Portion Used

■ The third factor in the § 107 analysis considers the amount and substantiality of the portion of the copyrighted material used in relation to the copyrighted work as a whole. In this case, City Pages copied "Tale of Two Islands" in its entirety. To this extent, this factor weighs against a finding of fair use. The fact that City Pages copied "Tale of Two Islands" in its entirety does not, however, preclude a finding of fair use. *See, e.g., Hustler Magazine, Inc. v. Moral Majority, Inc.,* 796 F.2d 1148, 1155 (9th Cir. 1986) (finding defendant's reproduction of copyrighted material a fair use under § 107 notwithstanding fact that defendant copied material in its entirety).

■ Belmore places great emphasis on the fact that City Pages copied "Tale of Two Islands" in its entirety. This emphasis is misplaced. In considering the amount copied under this factor, courts do not focus solely on the quantum of material copied; instead, courts must determine whether the amount copied is "reasonable in relation to the purpose of the copying." *Campbell,* —— U.S. at ——, 114 S.Ct. at 1175. In explaining how to

---

**3.** This feature makes City Pages' unauthorized reproduction of "Tale of Two Islands" similar to a reproduction the Ninth Circuit permitted in *Hustler Magazine, Inc. v. Moral Majority, Inc.,* 796 F.2d 1148 (9th Cir.1986). In *Hustler,* the defendant distributed copies of an obscene parody of Jerry Falwell which appeared in plaintiff's magazine. The defendant copied the parody to raise money for an anti-pornography campaign. The district court found that this copying was a permissible fair use under § 107 and granted summary judgment for the defendant. *Hustler Magazine, Inc. v. Moral Majority, Inc.,* 606 F.Supp. 1526 (C.D.Cal.1985). In·upholding the district court, the Ninth Circuit explicitly relied on the fact that "[t]here was no attempt to palm off the parody as that of the Defendant's. In fact the very opposite is true. [Defendant] was not selling the parody, but was instead using the parody to make a statement about pornography and Larry Flint, the publisher of Hustler." *Hustler,* 796 F.2d at 1153. In the present case, City Pages did not attempt to palm off "Tale of Two Islands" as its own, but instead used that article to make a statement about the Minneapolis Police Department and Belmore, a Minneapolis police officer.

**4.** The author of "Hooligan's Island" offered the following explanation for reprinting "Tale of Two Islands":

When I first read Officer Belmore's article in "Show–Up," I found it to be a transparently racist diatribe camouflaged as a fable. It seemed obvious to me that numerous references in the story could be understood only as alluding to the minority communities in the Twin Cities....

I was especially appalled by "Tale of Two Islands" because its author was a Minneapolis police officer and it was printed in a newspaper described as the official publication of the union representing virtually all Minneapolis police officers.

(Perry Aff. ¶¶ 3–4.)

apply this factor, the Court in *Campbell* noted that "[h]ere, attention turns to the persuasiveness of a [copier's] justification for the particular copying done, and the enquiry will harken back to the first of the statutory factors, for ... the extent of the permissible copying varies with the purpose and character of the use." *Id.* at ——, 114 S.Ct. at 1175.

City Pages contends that reprinting "Tale of Two Islands" was necessary to effectuate the critical, commentary, and news reporting purposes of "Hooligan's Island." Perry, the editor who wrote "Hooligan's Island," explained that:

> In preparing my commentary on "Tale of Two Islands," I originally intended to publish excerpts. But because it took the form of a parable and was relatively short, I decided that the repulsive message it appeared to convey could not be adequately communicated except by printing the story as a whole. In particular, the fact that Officer Belmore's piece was cast as a fable led me to believe that if I published excerpts, the meaning might be distorted or diminished ... my purpose in reprinting the entire article was purely to focus criticism and to ensure that my readers understood what I was criticizing....

(Perry Aff. ¶¶ 6–7.) Based on the unique nature of "Tale of Two Islands," the Court finds that the justification provided for reprinting it in its entirety is reasonable. The Court declines, however, to further involve itself in myriad possible methods of excerpting "Tale of Two Islands," and the extent to which these methods would affect the purported purpose of "Hooligan's Island." Such an inquiry is neither necessary nor appropriate for resolution of this case. The Court notes only that although wholesale copying militates against a finding of fair use, this factor does not have significant weight when

applied to the unique facts presented in this case.

### 4. Effect Upon Potential Market or Value

█ The fourth fair use factor is the effect of the use upon the potential market for or value of the copyrighted work. This factor is "undoubtedly the single most important element of fair use." *Harper & Row Publishers v. Nation Enterprises*, 471 U.S. 539, 566, 105 S.Ct. 2218, 2233, 85 L.Ed.2d 588 (1985). The focus of this factor is whether the new work will be a "market substitute" for the copyrighted material. *Campbell*, —— U.S. at ——, 114 S.Ct. at 1177. Accordingly, the market harm that results from criticism is not considered in the § 107 analysis; instead this factor considers only whether a use "supplants the original in markets the original is aimed at, or in which the original is, or has a reasonable potential to become, commercially valuable." *Fisher v. Dees*, 794 F.2d 432, 438 (9th Cir.1986); *see also Campbell*, —— U.S. at ——, 114 S.Ct. at 1178 (explaining that "[t]he fact that a parody may impair the market ... by the very effectiveness of its critical commentary is [not] relevant under copyright"); 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 13.05[A] at 13–187 (1994) (explaining that "a court need not take into account an adverse impact on the potential market for plaintiff's work by reason of a disparaging or otherwise unfavorable reference in defendant's work to plaintiff's work").

█ Belmore has not provided evidence from which a fact finder could reasonably conclude that City Pages materially impaired any alleged market for "Tale of Two Islands."[5] First, Belmore has not demonstrated current or past market harm. Belmore has provided no evidence that he has sold, or ever attempted to sell "Tale of Two Islands." In fact, the undisputed evidence demon-

---

**5.** Belmore alleges that because City Pages copied his work for commercial gain, there is a presumption that he suffered harm under this prong. Belmore cites *Campbell* for this proposition. (Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. at 13.) What *Campbell* says, however, is that "[N]o 'presumption' or inference of market harm ... is applicable to a case involving

something beyond mere duplication for commercial purpose." *Id.* at ——, 114 S.Ct. at 1177. City Pages did not merely duplicate "Tale of Two Islands" for commercial purposes. As explained above, City Pages reprinted "Tale of Two Islands" for the purposes of criticism, commentary and news reporting. Therefore, no presumption of market harm applies in this case.

strates that "Show–Up" did not pay Belmore for permission to publish "Tale of Two Islands" and that Belmore has not received any compensation in the last ten years for "any articles, essays, books, and similar items" that he may have published. (Pl.'s Answers to Def.'s Interrogs. Nos. 4, 12.) Moreover, this is not a case in which an infringer attempted to "scoop" the copyright holder by distributing the protected material before its publication. *See Harper & Row*, 471 U.S. at 562, 567, 105 S.Ct. at 2231, 2234 (finding market impairment when infringer's stated purpose was to "scoop" forthcoming hardcover publication and "supplant[ ] the copyright holder's valuable right of first publication"). Instead, "Hooligan's Island" was published six weeks after "Tale of Two Islands" appeared in "Show–Up."

Secondly, Belmore has not provided evidence to show that the future marketability of "Tale of Two Islands" has been impaired. Although Belmore claims in his interrogatory answer to have suffered $50,000 in future losses, (Pl.'s Answers to Def.'s Interrogs. ¶ 9, attached at Walther Aff., Ex. A), Belmore may not rely solely on unsupported allegations of future harm. *See Maxtone–Graham v. Burtchaell*, 803 F.2d 1253, 1263–64 (2nd Cir.1986), *cert. denied*, 481 U.S. 1059, 107 S.Ct. 2201, 95 L.Ed.2d 856 (1987) (finding defendant entitled to summary judgment on fair use defense when plaintiff was unable to provide evidence of future harm); *Norse v. Henery Holt & Co.*, 847 F.Supp. 142, 147 (N.D.Cal.1994) (same). Moreover, no reasonable fact finder could find future market harm from the evidence which has been provided in this case. City Pages published "Hooligan's Island" well over a year ago. It is highly unlikely that consumers seeking to purchase "Tale of Two Islands" would even know about, much less be able to locate old copies of "Hooligan's Island" if Belmore decides to place "Tale of Two Islands" in the market sometime in the future.

Belmore has specified no facts which demonstrate that "Hooligan's Island" is or will be a market substitute for "Tale of Two Islands." As a result, this factor weighs heavily in favor of City Pages.

### 5. Summary of § 107 Factors

 In applying the factors set out in § 107, courts must tailor the fair use analysis to the individual facts presented in each case. *Harper*, 471 U.S. at 552, 105 S.Ct. at 2226. The material facts in this case are not in dispute. The first factor weighs heavily in favor of City Pages. City Pages used "Tale of Two Islands" for a purpose specifically endorsed in § 107. The fourth factor also weighs heavily in favor of City Pages. No evidence suggests that a market for "Tale of Two Islands" has been harmed or will be harmed in the future. As discussed, this is the most important consideration under the § 107 analysis. The second and third factors weigh in favor of Belmore. However, the fact that "Tale of Two Islands" is a creative work and the fact that City Pages reprinted it in its entirety are not sufficient to counterbalance the significance of the first and fourth factors as applied to the facts presented in this case. As a result, City Pages is entitled to summary judgment on its fair use defense.[6]

### B. Attorney's Fees

 City Pages claims that it is entitled to costs and attorney's fees if it prevails on its Motion for Summary Judgment. Pursuant to 17 U.S.C. § 505, a court may, in its discretion, award costs and attorney's fees to the prevailing party in a copyright action. The Court finds that attorney's fees are not warranted in this case.

City Pages has not demonstrated that this action is frivolous or was commenced in bad faith. Belmore is the owner of a purportedly valid copyright, and City Pages published his copyrighted material. These facts are sufficient to establish a prima facie case of copy-

---

**6.** Because City Pages is entitled to summary judgment pursuant to the fair use doctrine, the Court need not address City Pages' argument that Belmore abandoned or waived his copyright claim by failing to affix a copyright notice to "Tale of Two Islands." The Court notes, however-

er, that City Pages' argument is not well-grounded. A notice of copyright is not required on works published after March 1, 1989. *See* 17 U.S.C. § 401(a); 2 Melvin B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 702[C][3] at 7–17 (1994).

right infringement. *See Hustler*, 796 F.2d at 1151 (noting that "[t]here are only two elements necessary to the plaintiff's case in an infringement action: ownership of the copyright by the plaintiff and copying by the defendant"). The mere fact that Belmore may have been motivated by the unfavorable light in which "Hooligan's Island" placed him does not demonstrate bad faith and does not justify an award of costs and attorney's fees.

### Conclusion

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 13) is **GRANTED** and Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

### APPENDIX A

## Tale of Two Islands

WARNING: This is a fairy tale for kids only and should not be read by adults. It is rated "OT-13" (older than 13 years should not read this). It may cause brain damage due to thinking. This is for amusement only and no political statement is made. REALLY!

Once upon a time there was a green jewel of an island in a light blue sea. The people of this island were hard working, honest and industrious. The streets of the island were well-kept, neat and clean. The houses were neat and painted and each yard was a garden of bright flowers.

If one of the islanders fell on hard times, the other islanders would help him and his family "ILL HE COULD GET BACK TO WORK. Everyone helped everyone else in this manner.

Across the water just over the horizon to the east was another island. It was clouded and black, smelly volcanic smoke. The houses were bleak, rundown. The streets and yards were filled with garbage and the beaches were strewn with empty fermented coconut shells. This was the land of the Spoilers.

The Spoilers did not work. They did not try to keep up their property. They were not an industrious people. They spent their time trying to rip-off others and partying all day and night.

One day, two of the Spoilers just happened to be out in their canoe and a storm came. It wash them up on the clean white beach of Green Island. The good people of Green Island found them and took them in. Gave them food, clothes and a place to stay.

The two Spoilers found that as long as they complained about their injuries and pain, they didn't have to work but to their surprise they still got their food, clothes and a place to stay even though they didn't work.

After many months of living off of the good people, the two Spoilers could not keep this "rip-off" to themselves so one day the Spoilers went back to their island and told everyone about this new scam.

More and more Spoilers started to wash up on the white beaches of Green Island and they too got clothes, food and a place to stay and didn't have to work for it.

Being noted for not being too industrious, the Spoilers let their new houses go to ruin. When they could not stay in them any longer, they demanded new ones.

Needless to say, the part of Green Island where the Spoilers stayed was rundown and tacky. This bad area of Green Island got bigger and bigger.

The good people found that they had to work harder and longer so the Spoilers could have what they wanted and the good people had to go without more and more.

The Spoilers had no time to fix houses, clean streets or yards. They had to protest to get more, they had to party, and they had to make babies. Making babies was good, they got them more food and clothes, that they could trade off for fermented coconut milk.

The good people of once Green Island could not take it anymore and one by one they left Green Island for another island just to the west on the horizon. Eventually leaving the Green Island to the Spoilers. The streets became full of garbage and trash and weeds replaced the flowers and the white beaches were strewn with empty coconut shells. One day, two Spoilers walking on the beach looked across the water to a green island toward the west. One Spoiler looked at the other and a big grin came over their faces. One Spoiler remarked to the other, "They were dumb enough to let us do it to them once, do you think we can do it to them again?" And with that, they jumped into their canoe and paddled off across the water to the new, Green Island with the clean white beaches, neat streets and homes and every yard a garden of bright flowers. "HOW DUMB ARE WE?

Officer Ed Becmore

## APPENDIX B

4 CITY PAGES October 13, 1993

**STEVE PERRY**

# Hooligan's Island

### Bedtime stories backed by Smith & Wesson

THE AVERAGE ISSUE of Shove-Up, the Minneapolis Police Federation's monthly paper, is full of aimless, surly kvetching by the rank & file—nobody appreciates them, nobody wants to give them enough power to do the job right—and a smattering of photos from union meetings and picnics. It's always an entertaining read, if only for the relentless sense of persecution conveyed in its pages. But occasionally a contributor outdoes himself. Such a man is Officer Ed Breznoe. Officer Breznoe's missive in the September issue, which takes the form of a kiddie fable entitled "Tale of Two Islands," is beyond description, so I'll just reprint the whole thing.

WARNING: This is a fairy tale for kids only and should not be read by adults. It is rated "OY-13" (older than 13 years should not read this) It may cause brain damage due to thinking. This is for amusement only and no political statement is made. REALLY!

Once upon a time there was a green jewel of an island in a light blue sea. The people of this island were hard-working, honest and industrious. The streets of the island were kept neat and clean. The houses were neat and painted and each yard was a garden of bright flowers.

If one of the islanders fell on hard times, the other islanders would help him and his family TILL HE COULD GET BACK TO WORK. Everyone helped everyone else in this manner.

Across the water just once the horizon to the east was another island. It was clouded and black, smelly volcanic smoke. [sic] The houses were black, rundown. The streets and yards were filled with garbage and the beaches were strewn with empty fermented coconut shells. This was the land of the Spoilers.

The Spa... did not try to keep up their property. They were not an industrious people. They spent their time trying to rip off others and partying all day and night.

One day, two of the Spoilers just happened to be out in their canoe and

...not stay in them any longer, they demanded new ones.

Needless to say, the part of Green Island where the Spoilers stayed was rundown and tacky. This bad area of Green Island got bigger and bigger. The good people found that they had

a storm came. It wash [sic] them up on the clean white beach of Green Island. The good people of Green Island found them and took them in. Gave them food, clothes and a place to stay.

The two Spoilers found that as long as they complained about their injuries and pain, they didn't have to work but to their surprise they still got their food, clothes and a place to stay even though they didn't work.

After many months of living off the good people, the two Spoilers could not keep this "rip-off" to themselves so one day the Spoilers went back to their island and told everyone about this new scam.

More and more Spoilers started to wash up on the white beaches of Green Island and they too got clothes, food and a place to stay and didn't have to work for it.

Being noted for not being too industrious, the Spoilers let their new houses go to ruin. When they could

to work harder and longer so the Spoilers could have what they wanted and the good people had to go without more and more.

The Spoilers had no time to fix houses, clean streets or yards. They had to protest to get more, they had to party, and they had to make babies. Making babies was good, they got them more food and clothes that they could trade off for for amended coconut milk.

The good people of once Green Island could not take it anymore and one by one they left Green Island for another island just to the west on the horizon. Eventually leaving Green Island to the Spoilers. The streets became full of garbage and trash and weeds replaced the flowers and the white beaches were strewn with empty coconut shells. One day, two Spoilers walking on the beach looked across the water to a green island toward the west. One Spoiler linked at the other and a big grin came over their faces. One Spoiler remarked to the other, "They were dumb enough to let us do it to them once, do you think we can do it to them again?" And with that, they jumped into their canoe and paddled off across the water to the new Green Island with the clean white beaches, most were it and houses and every yard a garden of bright flowers. HOW DUMB ARE WE.?

From that last question, I think we can infer that the office feels it's the civic duty of the protectors of any Green Island to despatch "Spoilers" back to whence they came, at least in the best of all possible worlds. As to the means involved in doing so, we can only guess. But he doesn't seem to think much of them, does he? Anyone inclined to doubt the stories they hear about cops and "Spoilers" and what transpires between them when no one else is around might do well to remember this little parable. **CP**

Feb. 27, 1995.