**TELEVISION DIGEST, INC., Plaintiff,**

v.

**UNITED STATES TELEPHONE ASSOCIATION, Defendant.**

**Civ. A. No. 85–3815.**

United States District Court, District of Columbia.

Oct. 22, 1993.

Dennis Lane, Holland & Knight and Mark Mutterperl, Fullbright & Jaworski, Washington, DC, for plaintiff.

Edmund Harvey, Chadbourne & Parke, Washington, DC, for defendant.

## MEMORANDUM

JOHN GARRETT PENN, Chief Judge.

This case comes before the Court on plaintiff, Television Digest Inc.'s ("Television Digest") Motion for Summary Judgment. After careful consideration of the motion, opposition, and entire record before the Court, the Court will grant plaintiff's motion insofar as it relates to liability. To the extent that the motion requests findings related to dam-

ages the Court concludes that material facts preclude summary judgment.

## I.

Plaintiff, Television Digest is the publisher of *Communications Daily,* a daily trade newsletter for the telecommunications industry. Motion for Summary Judgment ("Motion"), p. 4. *Communications Daily* has been in publication since January 19, 1981. The defendant, United States Telephone Association ("USTA") is the national trade association for local exchange telephone companies. USTA, with approximately fifty employees, monitors and participates in Congressional and regulatory activities; it presents seminars and educational conferences; it represents the industry viewpoint in the media; and it disseminates information about telephone industry issues. Opposition, p. 2.

On January 19, 1981 USTA purchased one subscription of *Communications Daily.* On January 23, 1985 USTA purchased one subscription to *Communications Daily.* Motion, p. 8, Affidavit of Albert Warren, President of Television Digest ("Albert Warren Affidavit"). The January 19, 1981 subscription covered dates between January 19, 1981 and March 21, 1982, for a purchase price of $673.00. The January 23, 1985 subscription covered dates between January 1, 1985 and December 31, 1985, for a purchase price of $1,250. Albert Warren Affidavit, ¶ 12. Rather than purchase additional subscriptions, USTA instituted a daily practice of making several photocopies of the single subscription issues, so that *Communications Daily* could be "instantaneously routed to all of the other staff members." *Id.* USTA made copies for its staff ranging from 12 to 26, each business day between February, 1981 and December 2, 1985.[1]

Based on these actions, Television Digest filed a copyright infringement action under the Copyright Revision Act of 1976 ("The Copyright Act"), 17 U.S.C. § 101 *et seq.,* seeking an injunction, an accounting for gains, compensatory and punitive damages,

and attorneys' fees. Television Digest then filed the instant motion for summary judgment.

## II.

Summary judgment is appropriate in copyright infringement actions where there is no serious dispute that the defendant reproduced copyrighted material owned by the plaintiff. Plaintiff has the burden of establishing copyright infringement, and must prove two essential elements: "ownership of a copyright and that defendant copied the protected material without authorization." *See Weissmann v. Freeman,* 868 F.2d 1313 (2d Cir.) *cert. denied,* 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989).

As a threshold issue, the Court must determine that the work, which is the subject of the copyright action, i.e. *Communications Daily,* is entitled to copyright protection. USTA argues that this question presents a genuine issue of material fact. That is, because most stories are taken from material available to the public, e.g. Public Notices and decisions of the Federal Communications Commission ("FCC"), *Communications Daily* contains information which cannot be copyrighted. USTA cites authority which states: works of the United States government are not copyrightable by others, 17 U.S.C. § 105; and work that is merely derivative of the uncopyrighted work of others is not copyrightable, *Suid v. Newsweek Magazine,* 503 F.Supp. 146 (D.D.C.1980).

USTA is incorrect regarding *Communications Daily*'s entitlement to copyright protection, for "while facts have not been given copyright protection ... compilations of such facts traditionally have been." *Schroeder v. William Morrow & Co.,* 566 F.2d 3 (7th Cir.1977). What is protected is "the author's original expression of particular facts." *Financial Information, Inc. v. Moody's Investors Service, Inc.,* 751 F.2d 501 (2d Cir.1984).

A work is original to the author and thus qualifies for copyright protection if the

---

1. From 1981 to 1983, USTA made between 12 and 15 copies of *Communications Daily,* each business day. In 1984 USTA made 20 copies of *Communications Daily,* each business day. In 1985 USTA made between 23 and 26 copies of *Communications Daily* each business day. Albert Warren Affidavit.

work is independently created by the author and possesses some minimal degree of creativity. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 344, 111 S.Ct. 1282, 1287, 113 L.Ed.2d 358 (1991). Thus, "[t]he mere fact that component parts of a collective work are neither original to the plaintiff nor copyrightable by the plaintiff does not preclude a determination that a combination of such component parts as a separate entity is both original and copyrightable." *Apple Barrel Productions, Inc. v. Beard,* 730 F.2d 384, 388 (5th Cir. 1984) *quoting* 1 Nimmer on Copyright §§ 3.02, 3.03. In examining the representative issues of *Communications Daily,* submitted on the motion, the Court concludes that the newsletter is more than a compilation of data; it provides original news stories.[2] *See* Motion, Exhibits B, C, and D. Thus, regarding the issue of entitlement to copyright protection, the Court concludes that *Communications Daily* is copyrightable.

■ Next, the Court must ensure that Television Digest has established ownership of the copyright to the issues of *Communications Daily* that were copied. Copyright ownership and protection vest with the author of an original work automatically upon its creation. 17 U.S.C. §§ 102, 201(a), 302(a); *WPOW, Inc. v. MRLJ Enterprises,* 584 F.Supp. 132, 136 (D.D.C.1984). There is a statutory presumption that Copyright Office registrations within five years of publication constitutes *prima facie* evidence of ownership. 17 U.S.C. § 401(c). Plaintiff has established ownership for issues of *Communications Daily* which were published between April 1, 1981, and January 16, 1985.[3]

Having established entitlement to copyright protection and ownership of the copyright, the Copyright Act confers certain exclusive rights to the owner of the copyright: the right to publish, copy, and distribute the author's work.[4] These rights vest upon creation of the work. 17 U.S.C. § 106. However, these rights are subject to limited exceptions delineated in sections 107–118. In this case copying is not disputed: USTA purchased single subscriptions to *Communications Daily* and then made multiple photocopies of it to provide to its staff members. However, USTA raises the defense of fair

2. In making this determination, the Court must necessarily conclude that these issues are representative of the entire lot of *Communications Daily* at issue in this case. USTA has not provided any evidence to the contrary.

3. Exhibit A to the motion provided the registration dates and registration certificate numbers of 234 issues of *Communications Daily,* published between April 1, 1985 and March 7, 1986. The motion indicated that all of the applications for *Communications Daily* relevant to this lawsuit, had been filed, but that the Copyright Office had not yet acted on them. Subsequently, plaintiff filed affidavits of Paul Warren, the acting managing editor of *Communications Daily* and Executive Vice President of Television Digest ("Affidavits 1–5") establishing plaintiff's copyright ownership to the issues of *Communications Daily.*

Affidavit 1 provides that the Copyright Office issued certificates of copyright registrations for an additional 674 issues of *Communications Daily* published between January 19, 1981 to March 29, 1985. *See* Affidavit of Paul Warren, filed July 10, 1986.

Affidavit 2 provides that the Copyright Office issued certificates of copyright registrations to Television Digest for an additional 234 issues of *Communications Daily* published between October 16, 1981 through January 16, 1985. *See*

Second Affidavit of Paul Warren, filed July 18, 1986.

Affidavit 3 provides that the Copyright Office issued certificates of copyright for 131 additional issues including published between January 20, 1981 and March 27, 1985. *See* Third Affidavit of Paul Warren, filed September 9, 1986.

Affidavit 4 provides that the Copyright Office issued certificates of copyright registrations to Television Digest for an additional 11 issues of *Communications Daily* published dates between April 16, 1981 and June 18, 1981. *See* Fourth Affidavit of Paul Warren, filed November 14, 1986.

Affidavit 5 provides that the Copyright Office issued certificates of copyright registrations to Television Digest for an additional 3 issues published between March 3, 1984 and October 17, 1984. *See* Fifth Affidavit of Paul Warren, filed May 1, 1987.

4. Section 106 provides:

Subject to sections 107–118, the owner of a copyright under this title has the exclusive rights to do and authorize any of the following:
(1) to reproduce the copyrighted work in copies . . . ;
(2) to prepare derivative works based upon the copyrighted work;
(3) to distribute copies . . . of the copyrighted work to the public . . . "

use. *See* 17 U.S.C. § 107. Accordingly, to find USTA liable for copyright infringement, the Court must satisfy itself that this exception does not apply.

## III.

### FAIR USE

■ Fair use "constitutes a privilege in others than the owner of a copyright to use the copyrighted material in a reasonable manner without [his or her] consent, notwithstanding the monopoly granted to the owner." *See e.g. Rosemont Enterprises, Inc. v. Random House, Inc.,* 366 F.2d 303, 306 (2d Cir.1966) *cert. denied,* 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967). Specifically, section 107 of the Copyright Act provides that:

> Notwithstanding the provisions of section 106, the fair use of a copyrighted work ... for purposes such as criticism, comment, news, reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.

Fair use is an equitable doctrine requiring an examination of the specific facts of each case. *See e.g., Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 552–555, 105 S.Ct. 2218, 2226–2227, 85 L.Ed.2d 588 (1985). Congress has identified four factors to consider in determining fair use:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

Further, "the factors enumerated in the section are not meant to be exclusive." *Harper & Row,* 471 U.S. at 560, 105 S.Ct. at 2231. Fair use is a mixed question of law and fact. *Id., quoting Pacific & Southern Co., Inc. v. Duncan,* 744 F.2d 1490, 1495, n. 8 (11th Cir.1984).

USTA contends that the determination of whether its copying was "fair use" is improper on a motion for summary judgment. Opposition, pp. 16–17. However, the Court disagrees. *See e.g., Rogers v. Koons,* 960 F.2d 301, 309 (2d Cir.) *cert. denied,* — U.S. —, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992) (The fact that the test envisioned by the Act is dependent on the circumstances of each case ... might suggest summary judgment is unavailable when fair use is the issue, but such relief may be granted when appropriate.) It is appropriate to dispose of the issue of fair use on a motion for summary judgment because the Court has "found facts sufficient to evaluate each of the statutory factors." *Harper & Row,* 471 U.S. at 560, 105 S.Ct. at 2230. Accordingly, the Court turns to an analysis of the fair use defense.

### Purpose and Character of the Use

USTA argues that its use of *Communications Daily* was for educational and news reporting purposes, and not for profit making purposes. USTA states that its sole purpose is to provide its members with information and advice on the telephone industry, and in this capacity it makes copies of *Communications Daily* as a research aid for its staff.

■ Copies made for commercial or profit making purposes are presumptively unfair. *Sony Corp. of America v. Universal City Studios Inc.,* 464 U.S. 417, 449, 104 S.Ct. 774, 792, 78 L.Ed.2d 574 (1984). Further, "the commercial or nonprofit use of the publication 'must necessarily be part of a court's analysis.'" *Id. quoting Financial Information,* 751 F.2d at 508. However, "[t]he crux of the profit/non-profit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material *without paying the customary price.*" *Harper & Row,* 471 U.S. at 562, 105 S.Ct. at 2231. USTA may not have directly profited in the sense of a monetary gain; however there is no dispute that USTA saved money by photocopying one subscription issue instead of ordering the amount of subscriptions it required per reader. USTA places great reliance on the fact that it is a non-profit organization. However this does

not compel a finding of fair use. *Marcus v. Rowley,* 695 F.2d 1171 (9th Cir.1983).

■ The gist of the fair use defense is reasonableness and good faith; and USTA's argument that the "publication was of little or no value" because USTA staff members already knew the information contained in the publication, is contradicted by USTA's extensive photocopying. In *American Geophysical Union v. Texaco Inc.,* 802 F.Supp. 1, 13–14 (S.D.N.Y.1992), a case involving the photocopying of scientific and technical journals, the court found that the principle purpose and feature of defendant's copying was to give numerous company scientists their own copy based on the company's purchase of an original. The court further concluded that this use disfavored a finding of fair use, despite the defendant's allegation that its purpose was "to advance scientific discovery." *Id.* Similarly, in the instant case, the Court concludes that the purpose and character of USTA's use disfavors a finding of fair use, notwithstanding USTA's non-profit status, and assertion that the copying was merely to further its research and education functions.

## Nature of the Copyrighted Work

USTA argues that *Communications Daily* is largely uncopyrightable. However, as discussed at length, above, the Court has concluded that the *Communications Daily* is copyrightable, in that it is a newsletter containing original news stories, which cite information in the public domain. *See* Part I.

■ There is a broader fair use for factual works than with creative or literary works. *See e.g. Harper & Row,* 471 U.S. at 563, 105 S.Ct. at 2231, *quoting* Gorman, *Fact or Fancy? The Implications for Copyright,* 29 J. Copyright Soc. 560, 561 (1982). ("[t]he law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy.") Thus, the nature of the work would tend to favor a finding of fair use. However, this one factor alone, does not compel a finding of fair use.

## Amount and Substantiality of the Portion Used

Next, the Court must consider the amount and substantiality of the portion used in relation to the copyrighted work as a whole. USTA has admitted to ordering single subscriptions of *Communications Daily* and making photocopies of it for its staff members. Thus the entire copyrighted work was used.

On this prong, USTA relies on *Sony Corporation of America v. Universal City Studios, Inc.,* 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). In *Sony,* the Supreme Court held that videotaping copyrighted television programs, for home use, was fair use. In coming to this conclusion, the Court relied on the theory of "timeshifting", i.e. videotaping for the purpose of viewing at a later time. The most persuasive factors to the Court were that television programming, in the first instance is free; and timeshifting had no effect on the market.

USTA compares its "instantaneous routing" to the timeshifting theory. Yet, while each photocopy of *Communications Daily* represents a potential subscription that USTA is not paying for, the television shows that are taped for later viewing, are free. In addition, a newsletter may be put aside to be read at anytime, thus unlike television programs, copying is unnecessary for timeshifting. In reality the copying in the instant case served to expand the newsletter's base of readers, without USTA paying the normal fee. Thus the Court concludes that the amount and substantiality factor works against a finding of fair use.

## Effect on the Market

The Supreme Court has stated that the effect of the use upon the potential market for or value of the copyrighted work is "undoubtedly the single most important element of fair use." *Harper & Row,* 471 U.S. at 566, 105 S.Ct. at 2233. In the instant case, to the extent that the internal routing represented additional, potential subscriptions, the Court finds that the market was negatively affected. USTA maintains that the market was not affected at all, because USTA would not have purchased any additional subscriptions. Yet, regardless of whether, with hindsight,

USTA believes that it would not have purchased additional subscriptions, the fact is that USTA's pattern of making several copies of its one subscription saved it a substantial sum of money. This use of *Communications Daily* was unfair and unreasonable, for, "with certain special exceptions . . . a use that supplants *any* part of the normal market for a copyrighted work would ordinarily be considered an infringement." *Harper & Row,* 471 U.S. at 568, 105 S.Ct. at 2235, *quoting* S.Rep. No. 94–473, p. 65 (1975) *emphasis supplied.* Thus, in considering the facts of this case, as applied to the doctrine of fair use, the Court concludes, as a matter of law that USTA's use of *Communications Daily* did not constitute fair use.

## IV.

## DAMAGES

■ Regarding damages, "anyone who violates any of the exclusive rights of the copyright owner" is an infringer, 17 U.S.C. § 501(a), liable to a copyright owner for its actual damages and any additional profits realized by the infringer or statutory damages, and attorneys' fees. *Id.,* §§ 501(b), 502–506. Television Digest seeks statutory damages for the period of July 10, 1985 though December 2, 1985, and actual damages for the remaining period of infringement, i.e. February 1981 through July 9, 1985.

Statutory damages are available for all infringements of copyrights registered within three months after the first publication of the work. 17 U.S.C. § 412. The copyright owner may elect, prior to final judgment, instead of actual damages and profits, "an award of statutory damages for all infringements involved in the action, with respect to any one work." 17 U.S.C. § 504(c)(1). If plaintiff elects statutory damages, the Court must award "a sum of not less than $250 or more than $10,000 as the court considers just," regardless of whether the Court finds the infringement to be willful or innocent. *Id.* Should the Court find any infringement of any one work to have been committed willfully, "the court in its discretion may increase the award [for that infringement] . . . . to a

sum of not more than $50,000." *Id.,* § 504(c)(2).

With the above principles in mind, the Court concludes that there are questions of material fact which make it inappropriate to resolve the amount of damages via summary judgment. For example, there is a statute of limitations issue to be resolved. Television Digest seeks actual damages for copying dating back to February, 1981. USTA contends that the damages Television Digest's seeks extend beyond the three year statute of limitations period. 17 U.S.C. § 507. *See e.g., Hoste v. Radio Corp. of America,* 654 F.2d 11 (6th Cir.1981) (three year statute of limitations of Copyright Act barred recovery of any claims based on damages accruing more than three years before the complaint was filed.) In *Hoste,* which involved a summary judgement motion by the defendant based on the defense of laches, the Court found that "the complaint raised material issues of fact as to whether the delay in bringing suit was unreasonable and whether the defendants were prejudiced by the delay." 654 F.2d at 12. Similarly, because there is a dispute surrounding the statute of limitations in the instant case, it would be inappropriate for the Court to award the plaintiff actual damages on summary judgement. *See also Watkins v. Northwestern Ohio Tractor Pullers Ass'n Inc.,* 630 F.2d 1155 (6th Cir.1980).

Additionally, there are material factual disputes surrounding the willful nature of USTA's copying, and the total number of copies at issue for the purposes of calculating both statutory and actual damages.

## V.

For the reasons set forth above, the Court concludes that defendant is liable for infringement of plaintiff's copyright of *Communications Daily.* In light of this finding of liability, and the remaining factual disputes surrounding damages, the Court concludes that it would be useful for the parties to meet and confer in an effort to come to terms on a possible settlement. Further, the Court will require the parties to file a memorandum setting forth their proposed course of action with respect to the issue of damages. Accordingly, plaintiff's motion for

**12**

summary judgment is granted in part, on the issue of liability, and denied in part on the issue of damages. An appropriate order accompanies this memorandum.