**MAROBIE–FL, INC. d/b/a Galactic Software, Plaintiff,**

v.

**NATIONAL ASSOCIATION OF FIRE EQUIPMENT DISTRIBUTORS AND NORTHWEST NEXUS, INC., Defendants.**

No. 96 C 2966.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 13, 1997.

vate pension recipients by not including them in the offset provision. *Edwards v. Valdez,* 789 F.2d

1477 (10th Cir.1986).

Marvin N. Benn, Dawn Marie Cassie, George W. Hamman, Jeanne Marie Hoffmann, Stephen Joseph Cassin, Hamman & Benn, Chicago, IL, for Marobie–FL, Inc.

James Kenneth Borcia, Jacqueline A. Criswell, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for National Ass'n of Fire Equipment Distributors and Norwest Nexus Inc.

Mary Patricia Benz, Thomas M. Crisham, Quinlan & Crisham, P.C., Chicago, IL, for Northwest Nexus, Inc.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Marobie–FL, Inc. d/b/a Galactic Software has filed a complaint against defendants National Association of Fire Equipment Distributors ("NAFED") and Northwest Nexus, Inc. ("Northwest") for copyright infringement (Count I) and unfair competition (Count II). Northwest has filed a cross-claim against NAFED seeking indemnification for any judgment or settlement in favor of plaintiff and for any attorneys' fees, costs or other expenses it incurs. Presently before the court are Northwest's motion for summary judgment against plaintiff on Counts I and II and plaintiff's motion for summary judgment against both defendants on Count I.

### FACTUAL BACKGROUND

The following facts are undisputed except where otherwise noted. Between September 1993 and March 1994, three volumes of software of "clip art" were developed and released for use by people in the fire service industry. Computer clip art consists of ready-made disks of black and white or color line art drawings and graphics that a computer user can display on his computer and use as artwork. Plaintiff asserts that it owns valid copyrights for each volume of the clip art software.

The World Wide Web (the "Web") or the Internet is a network of interconnected computers linked by communications lines that allows persons with the appropriate software to access other computers with their local computer through the use of a modem. Information on the Web is published in "Web Pages." A Web Page is a collection of electronic documents which may include text, graphics, sound, or video. A Web Page may enable the user to place information on the Web Page or to receive information from the Web Page.

NAFED has a Web Page on the Web. Pursuant to a contract between NAFED and Northwest, Northwest provided a host computer for NAFED's Web Page and the access link or connection of NAFED's Web Page to Web users. Earl E. Robisheaux ("Robisheaux"), the administrator of NAFED's Web Page, placed certain files on the Northwest computer for NAFED's Web page. Once placed on Northwest's computer for NAFED's Web page, the files were available to be downloaded by Web users. Plaintiff claims these files contained its copyrighted clip art.

### DISCUSSION

### I. SUMMARY JUDGMENT STANDARDS

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Unterreiner v. Volkswagen of America, Inc.*, 8 F.3d 1206, 1209 (7th Cir.1993). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R.Civ.P. 56(e); *Becker v. Tenenbaum–Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir.1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Fisher v. Transco Services–Milwaukee, Inc.*, 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Stewart v. McGinnis*, 5 F.3d 1031, 1033 (7th Cir.1993). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insuffi-

cient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

## II. COPYRIGHT INFRINGEMENT (COUNT I)

■ To establish a claim of copyright infringement, plaintiff must demonstrate (1) ownership of a valid copyright and (2) "copying"[1] of original constituent elements of the work. *See Harris Custom Builders, Inc. v. Hoffmeyer,* 92 F.3d 517, 519 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 956, 136 L.Ed.2d 842 (1997). Violation of any of the exclusive rights of the copyright owner constitutes infringement. 17 U.S.C. § 501(a). These exclusive rights include the right to reproduce the work, the right to prepare derivative works based on the work, the right to distribute copies of the work to the public, and the right to display the work publicly. 17 U.S.C. § 106(1)-(3) & (5).

Plaintiff claims that NAFED infringed its copyrights when NAFED's agent Robisheaux, after obtaining files containing plaintiff's clip art from an unknown source, copied the files onto the hard drive of his computer and then copied the files onto the hard drive of Northwest's computer by transmitting them over the Internet, thereby making the files available for distribution through NAFED's Web Page. Plaintiff's allegations against Northwest are slightly more complicated. When an Internet user requests a file that is posted on NAFED's Web Page, Northwest's computer sends the information in the requested file to the user's local computer or Internet address. This process is known as "downloading" a file. The files on NAFED's Web Page are stored in the hard drive of Northwest's computer. According to Northwest, when the information in a requested file is sent to an Internet user, the information passes in electronic form through the Random Access Memory ("RAM") of its computer. Plaintiff claims that Northwest

directly infringed its copyrights each time an Internet user downloaded one or more of the files containing plaintiff's clip art because, each time, Northwest's computer "copied" the files from its hard drive to its RAM. Plaintiff also claims Northwest is liable for contributory infringement.[2]

### A. INFRINGEMENT BY NAFED

■ Plaintiff seeks summary judgment against NAFED on Count I on a theory of direct infringement. Direct infringement does not require any particular state of mind. 17 U.S.C. § 501(a); *Playboy Enterprises, Inc. v. Frena,* 839 F.Supp. 1552, 1559 (M.D.Fla.1993) ("Intent or knowledge is not an element of infringement, and thus even an innocent infringer is liable for infringement"). Accordingly, to establish direct infringement by NAFED, plaintiff need only demonstrate that it owns a valid copyright and that NAFED violated one or more of its exclusive rights as the copyright owner. *Harris Custom Builders,* 92 F.3d at 519. "A certificate of registration from the U.S. Register of Copyrights constitutes prima facie evidence of the validity of a copyright." *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 507 (7th Cir.1994). Plaintiff has presented a copy of the copyright registration certificate for each of the three volumes of its clip art software. Neither NAFED nor Northwest disputes the validity of these copyrights. Rather, NAFED claims that plaintiff has failed to show that it is a proper claimant.

■ The registration certificate for the first volume of clip art states that the authors of the work are Arnold B. Green ("Green") and Aloysius J. Polaneczky ("Polaneczky") and that the copyright claimant is Marobie–FL, Inc.—the plaintiff in this case. The registration certificate for the second volume of clip art also states that authors of the work are Green and Polaneczky and that plaintiff is the copyright claimant. The registration certificate for the third volume of

---

**1.** In this context, "copying" is "shorthand for the infringing of any of the copyright owner's five exclusive rights." *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1085 n. 3 (9th Cir.1989).

**2.** Although plaintiff does not claim Northwest is vicariously liable for copyright infringement, this issue will be addressed below because Northwest seeks summary judgement in its favor on this theory of liability.

clip art states that the author of the work is Green and that plaintiff is the copyright claimant. Only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). A plaintiff in an infringement case who is not the author of the copyrighted work must therefore "establish a proprietary right through the chain of title in order to support a valid claim to the copyright." *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 484 (1st Cir.1985). NAFED claims that Marobie–PA, Inc.—a Pennsylvania corporation that preceded Marobie–FL, Inc.—was the corporation in existence when the clip art software was developed and the corporation that initially sold the clip art software. Although all three registration certificates indicate that plaintiff obtained ownership of the copyright from the authors by assignment, NAFED complains that plaintiff has failed to submit any independent evidence of an assignment to it from either the authors or Marobie–PA, Inc.

■ A plaintiff's chain of title from the author is presumed by reason of the registration certificate where the plaintiff obtained an assignment of rights prior to registration. 4 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright*, § 13.01[A]. In the instant case, plaintiff obtained an assignment of rights from the authors prior to registration. Plaintiff's chain of title may therefore be presumed. NAFED's allegations regarding Marobie–PA, Inc. are irrelevant because there is no evidence that Marobie–PA, Inc. ever owned the copyrights. Moreover, plaintiff has submitted with its reply brief documentation of an assignment to it of the rights and interests in the clip art software.[3] Accordingly, plaintiff has demonstrated that it owns valid copyrights for the three volumes of clip art software and that it is a proper claimant.

3. Plaintiff claims to have produced evidence of the assignments in discovery.

4. The operator in *Playboy* was also found liable for violating the plaintiffs exclusive right to pub-

■ Plaintiff has also satisfied the second element of direct infringement: violation of one or more of its exclusive rights as the copyright owner. NAFED admits that Robisheaux obtained copies of files containing plaintiff's clip art and placed the files onto the hard drive of his computer. NAFED also admits that Robisheaux placed the files onto the NAFED Web Page by copying them onto to the hard drive of Northwest's computer. These actions constitute a violation of plaintiff's exclusive right to reproduce the clip art. *See Sega Enterprises Ltd. v. MAP-HIA*, 948 F.Supp. 923, 931–32 (N.D.Cal.1996) (copies made each time Sega computer program files uploaded to or downloaded from computer bulletin board service); *Playboy Enterprises, Inc. v. Frena*, 839 F.Supp. 1552, 1556 (M.D.Fla.1993) (uploading files containing digitized copies of plaintiff's copyrighted photographs onto computer bulletin board service constituted unauthorized reproduction); 2 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright*, § 8.08[A][1] ("input of a work into a computer results in the making of a copy, and hence ... such unauthorized input infringes the copyright owner's reproduction right").

The placement of the files containing the clip art on NAFED's Web Page also violated plaintiffs exclusive right to publicly distribute the clip art. *See Playboy*, 839 F.Supp. at 1556–57 (operator of computer bulletin board service which included files containing digitized copies of plaintiffs copyrighted photographs was liable for unauthorized public distribution).[4] NAFED denies that anyone other than Robisheaux or Green actually downloaded and received any files containing plaintiffs clip art from NAFED's Web Page. NAFED admits, however, that once the files were uploaded, they were available for downloading by Internet users and that the Northwest server transmitted the files to some Internet users when requested. Thus, unless a genuine issue of material fact exists with respect to an affirmative defense that would relieve NAFED of liability, plaintiff is

licly display copies of its work. *Id.* Although plaintiff does not allege NAFED violated its right to publicly display the clip art, NAFED appears to liable for violating this right as well.

entitled to summary judgment against NAFED on Count I on a theory of direct infringement. NAFED raises three affirmative defenses.

The first affirmative defense raised by NAFED is the innocent infringer defense. Although innocent intent does not relieve a defendant of liability for infringement, any person who "innocently infringes a copyright, in reliance upon an authorized copy ... from which the copyright notice has been omitted and which was publicly distributed by authority of the copyright owner ... incurs no liability for actual or statutory damages ... for any infringing acts committed before receiving actual notice that registration for the work has been made ... if such person proves that he or she was misled by the omission of notice." 17 U.S.C. § 405(b). NAFED claims that it qualifies as an innocent infringer because Robisheaux believed that the clip art was not copyrighted because there was no copyright notice on the clip art itself or on the disks containing the clip art files Robisheaux obtained. NAFED also argues that the fact that Robisheaux obtained disks without a copyright notice that nevertheless contained the clip art files raises an issue of fact as to whether plaintiff sold some disks without a copyright notice.

■ NAFED cannot qualify as an innocent infringer as a matter of law because the defense may be raised only when the infringer relied on an authorized copy that omitted the copyright notice. In this case, Robisheaux relied on unauthorized copies of plaintiff's clip art files. Although the individual clip art images did not bear a copyright notice, notice should not be considered omitted because, as plaintiff points out, the individual images are not the subject of the copyright; the volumes of clip art were copyrighted as compilations. It is undisputed that plaintiff's clip art software was accompanied by a single copy licensing agreement that prohibited use on a computer network and use on more than one computer or terminal at a time. It is also undisputed that each

individually packaged diskette sold by plaintiff contained a label containing a copyright notice.[5]

The fact that the disks used by Robisheaux did not bear a copyright notice does not indicate that plaintiff may have sold some disks without a copyright notice as NAFED suggests. According to his own testimony, Robisheaux responded to an e-mail from an unknown person who was offering to provide clip art to anyone who wanted it. Pursuant to this unknown person's instructions, Robisheaux mailed a number of blank disks to a location he no longer recalls. When the disks were returned to him, they contained the clip art files. The disks Robisheaux received did not bear a copyright notice because they were his own blank disks. The absence of copyright notices, as well as the suspicious manner in which the files were obtained, constitutes ample evidence that the copies were unauthorized. NAFED fails to present any evidence to the contrary. Accordingly, NAFED cannot qualify as an innocent infringer. *See Act Young Imports, Inc. v. B and E Sales Co., Inc.*, 667 F.Supp. 85, 87 (S.D.N.Y.1986) (plaintiff entitled to summary judgment on infringement claim because defendant failed to refute plaintiff's evidence that copy relied upon was unauthorized).

■ The second affirmative defense raised by NAFED is estoppel. NAFED argues that plaintiff should be estopped from seeking actual damages from NAFED because plaintiff failed to affix copyright notices to any of the individual clip art images thereby causing Robisheaux to rely on their absence. "[E]stoppel applies only if the copyright owner is aware of the infringing conduct yet acts in a way that induces the infringer reasonably to rely upon such action to his detriment." *Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934, 937 (7th Cir.1993) (citing *Chi–Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1228 (7th Cir. 1991)). NAFED fails to present any evidence that plaintiff was aware of NAFED's alleged infringement prior to Green's discov-

---

5. NAFED tries to limit its admission of this fact by stating that it "is without knowledge or information to determine whether [the assertion] is true as to 'every diskette.'" Plaintiff provides evidence to support its assertion that every disk contained a copyright notice. Because NAFED fails to deny plaintiffs assertion, it is deemed admitted pursuant to Local General Rule 12.

ery of the clip art on NAFED's Web Page in March 1996. NAFED also fails to point to any conduct by plaintiff after Green's discovery that induced NAFED to reasonably rely to its detriment. On the contrary, it is undisputed that plaintiff's counsel notified Northwest and NAFED on or around April 18, 1996, that there were infringing copies of its clip art files on NAFED's Web Page. Plaintiff's failure to place copyright notices on the individual clip art images cannot be considered because the decision not to put copyright notices on the individual images was made when the software was first created and sold. Even if this decision were considered, any reliance on the absence of copyright notices on the individual images would be unreasonable in light of the suspicious nature of Robisheaux's acquisition of the files and the fact that the volumes of clip art, not the individual images, are the subject of the copyrights. Estoppel is, therefore, inapplicable.

■■■ The third and final affirmative defense raised by NAFED is fair use. NAFED argues that summary judgment in plaintiff's favor is inappropriate because the issue of whether the fair use affirmative defense applies to NAFED's conduct depends on disputed issues of fact. The doctrine of fair use was codified at 17 U.S.C. § 107, which provides:

> the fair use of a copyrighted work ... for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

Whether a use qualifies as a permissible fair use under § 107 is a mixed question of law and fact. *Harper & Row Publishers, Inc. v.*

*Nation Enterprises,* 471 U.S. 539, 560, 105 S.Ct. 2218, 2230, 85 L.Ed.2d 588 (1985). Nevertheless, when "there are no material factual disputes that impede [the] determination of fair use," summary judgment is appropriate. *Wright v. Warner Books, Inc.,* 953 F.2d 731, 740 (2d Cir.1991).

■■■ The first factor—"the purpose and character of the use, including whether such use is of a commercial nature"—weighs in favor of plaintiff. NAFED is a non-profit organization and did not did not receive any compensation for placing the clip art on its Web Page. Yet, its conduct may still be considered commercial. *See Television Digest, Inc. v. United States Telephone Association,* 841 F.Supp. 5, 9–10 (D.D.C.1993) (finding non-profit national trade association's duplication and distribution of copyrighted newsletter was not non-profit use). "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row,* 471 U.S. at 562, 105 S.Ct. at 2231. It is undisputed that NAFED obtained copies of plaintiff's clip art files for free although they ordinarily cost money. It is undisputed that NAFED placed these files on its Web Page and made them available free of cost to its members and other Internet users. It is also undisputed that NAFED uses its Web Page for the commercial purposes of promoting the association (whose members pay dues) and generating advertising revenue. The clip art files enhanced the Web Page and furthered these commercial purposes; they were clearly not placed on the Web Page for the purposes of criticism, comment, news reporting, teaching, scholarship, or research. In fact, according to Robisheaux's testimony, NAFED promoted its Web Page in its publications and specifically referred to the "full color graphics, photos and other appealing images" on the Web Page.

■■■ The second factor—"the nature of the copyrighted work"—also weighs in favor of plaintiff. "This factor recognizes that some types of works are closer to the core of intended copyright protection than others,

and as a result the scope of the fair use exception is broader for informational works than for creative works." *Belmore v. City Pages, Inc.*, 880 F.Supp. 673, 678 (D.Minn. 1995) (citing *Harper & Row*, 471 U.S. at 563–64, 105 S.Ct. at 2232–33). NAFED argues that the fact Green used diagrams and images from outside sources to create the clip art software makes the works "factual" as opposed to creative. The fact that Green drew on outside sources when he created the clip art compilations does not make the compilations factual or informational. On the contrary, the clip art compilations are clearly creative works: it is undisputed [6] that Green: (1) selected only some of the many images he gathered; (2) converted the images into electronic format by "scanning" them; (3) named the scanned images; (4) edited and modified each image, pixel by pixel, to achieve the appearance he desired; (5) colored each of the images; and (6) organized the images by placing the files into various directories.

The third factor—"the amount and substantiality of the portion used in relation to the copyrighted work as a whole"—also weighs in favor of plaintiff. NAFED argues that it copied less than all of plaintiff's copyrighted work because there were only three volumes of plaintiff's clip art on NAFED's Web Page, even though five volumes of such clip art exist. NAFED's argument is without merit. Each volume of clip art was copyrighted as an independent work. This court has already determined that NAFED copied the first three volumes in their entirety.

■ The fourth factor—"the effect of the use upon the potential market for or value of the copyrighted work"—weighs in favor of plaintiff as well. "The focus of this factor is whether the defendant's new work will be a 'market substitute' for the copyrighted material." *Belmore*, 880 F.Supp. at 679 (citing *Harper & Row*, 471 U.S. at 563–64, 105 S.Ct.

at 2232–33). Because this court determined that NAFED's use of plaintiff's clip art was commercial, an adverse effect or the likelihood of an adverse effect on the potential market for the copyrighted work may be presumed. *Sony Corp. of America, Inc. v. Universal City Studios, Inc.*, 464 U.S. 417, 451, 104 S.Ct. 774, 792–93, 78 L.Ed.2d 574 (1984).

Thus, a consideration of each of the four factors enumerated in § 107 indicates NAFED's use of plaintiff's clip art was not a fair use. NAFED does not present any other facts that might negate the evidence already considered.[7] Accordingly, the court finds as a matter of law that NAFED's conduct did not constitute a fair use under § 107. Because there are no genuine issues of material fact with respect to any of the affirmative defenses raised by NAFED, plaintiff's motion for summary judgment against NAFED on Count I is granted.

## B. INFRINGEMENT BY NORTHWEST

Plaintiff seeks summary judgment against Northwest on Count I on theories of direct infringement and contributory infringement. Northwest seeks summary judgment against plaintiff on Count I on theories of direct infringement, contributory infringement and vicarious liability.

### 1. Direct Infringement

■ Northwest argues it cannot be held liable for the direct infringement of plaintiff's copyrights for two reasons. First, Northwest argues that the transmission of the information in a requested file in electronic form through the RAM of its computer does not constitute "copying" as a matter of law. Under the Copyright Act (the "Act") "copies" are defined as "material objects ... in which a work is fixed by any method now known or later developed, and from which the work

---

6. Once again, NAFED attempts to avoid admitting various factual assertions by plaintiff relating to Green's creation of the volumes of clip art by stating it is "without sufficient knowledge or information to admit or deny" the assertions. Because NAFED fails to deny these assertions, they are deemed admitted pursuant to Local General Rule 12.

7. Although NAFED asserts its status as an innocent infringer should be considered, the court has already determined that NAFED's infringement was not entirely innocent.

can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 101. "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy ... is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Id.* Northwest claims it made no "copy" because the information from plaintiff's clip art files was never "fixed" in its computer's RAM.

The court finds Northwest's argument unpersuasive in light of several cases that discuss the nature of information in RAM. In *MAI Systems Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 518–19 (9th Cir.1993), the Court of Appeals for the Ninth Circuit held that a "copy" for the purposes of the Act is made when a computer program is transferred from a computer storage device such as Read Only Memory ("ROM")[8] to RAM. The MAI court found that the copyrighted software program at issue was "fixed" in RAM because the computer user was able to view a representation of the program's information, including the system error log, after loading the program into the computer's RAM. *Id.* at 518. In *Religious Technology Center v. Netcom On–Line Communication Services, Inc.,* 907 F.Supp. 1361 (N.D.Cal. 1995), the district court applied the reasoning of MAI to a scenario analogous to that presented in the instant case. In *Religious Technology Center,* plaintiffs brought an infringement action against the operator of a computer bulletin board service (the "operator") and an Internet access provider (the "provider") because an individual bulletin board subscriber (the "subscriber") was posting portions of their copyrighted work onto his local bulletin board where it could be read and from which it was distributed to other bulletin boards. The subscriber posted his messages in the following manner. First, the subscriber connected to the operator's bulletin board using a telephone and modem.

The subscriber then transmitted his messages to the operator's computer. According to a prearranged pattern established by the provider's software, the subscriber's initial act of posting a message resulted in the automatic copying of the subscriber's message from the operator's computer onto the provider's computer and onto other computers in the community of electronic bulletin board services, commonly known as the Usenet. Relying on MAI, the court in *Religious Technology Center* determined that "copies" within the meaning of the Act were created on both the operator's computer and the provider's computer in the course of transmission. *Id.* at 1368.

In the instant case, plaintiff claims its copyrighted information was transmitted from the hard drive of Northwest's computer to Internet users. Northwest does not claim that the copy that existed in its hard drive was the copy sent to an Internet user. On the contrary, Northwest itself asserts that its computer "automatically serves up a copy of the requested file" when a file is asked for by an Internet user. It is that copy in the RAM of Northwest's computer that is transmitted to the Internet user. Northwest argues that this copy is not a "copy" under the Act because it is not "fixed." Northwest argues that it is not "fixed" because the information is transmitted "through" RAM and over the Internet at high speed in the electronic form of bytes. According to Northwest, this process of duplication and transmission happens so quickly that "typically only a portion of a file is in RAM at any one time."

"A work is 'fixed' in a tangible medium of expression when its embodiment in a copy ... is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101. Yet, a "copy" under the Act need not be potentially perceptible with the naked eye.

---

8. External and internal hard disks are also storage devices. *See Advanced Computer Services of Michigan, Inc. v. MAI Systems Corp.,* 845 F.Supp. 356, 362 (E.D.Va.1994). Relying on *MAI Systems Corp. v. Peak Computer, Inc.,* the court in *Advanced Computer Services* held that a computer program, "in the form of electrical impulses in RAM, is adequately 'fixed' to qualify as a 'copy' for purposes of the Act" because "[o]nce a software program is loaded into a computer's RAM, useful representations of the program's information or intelligence can be displayed on a video screen or printed out on paper." *Id.* at 363.

On the contrary, a "copy" is a "material object[ ] ... in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly *or with the aid of a machine or device."* 17 U.S.C. § 101. In the instant case, the copy created by Northwest's computer can be perceived with the aid of a machine or device, namely, the Internet user's computer. Although the information in a file is transmitted in pieces, Northwest itself states that "the smaller units are reunited, and the files arrive at the requester's Internet address," and that the Internet user may then view the information by "load[ing] the graphic images into some computer program capable of displaying the formatted image."

Northwest argues that the copying element was found satisfied in *Religious Technology Center* because the electronic data at issue remained on the computer for days and in MAI because the electronic data at issue remained on the computer long enough to check an error log by viewing it on the computer screen. In the instant case, the information does not remain in the RAM of Northwest's computer, but is immediately transmitted over the Internet. Nevertheless, Northwest's argument fails. The fact that a copy is transmitted *after* it is created, or even *as* it is created, does not change the fact that once an Internet user receives a copy, it is capable of being perceived and thus "fixed." Accordingly, the court rejects Northwest's argument that its computer did not "copy" plaintiff's files when they were requested by Internet users.

■■■ Northwest's second argument why it cannot be held liable for the direct infringement of plaintiff's copyrights is based on *Religious Technology Center.* In that case, the court held that although "copies" were made, the operator of the bulletin board service and the Internet access provider were not liable for direct infringement. *Religious Technology Center,* 907 F.Supp. at 1369–73. Unlike the defendants in MAI, the court reasoned, neither the operator nor the provider initiated the copying; their systems were merely used to create a copy by a third party. *Id.* at 1369–71. Similarly, the court

found that only the subscriber should be liable for causing the display or distribution of the copyrighted work because the actions of the operator and the provider were "automatic and indiscriminate." *Id.* at 1371–72. Thus, Northwest argues it cannot be held liable for direct infringement because if any copying, distribution or display of plaintiff's work occurred, it was caused not by Northwest, but by Internet users.

Northwest's second argument is persuasive. Plaintiff argues that Northwest, unlike the Internet access provider in *Religious Technology Center,* serves as more than just a gateway to the Internet because Northwest actually stores the files in NAFED's Web Page in its hard drive. Although plaintiff correctly points out that Northwest provides a service somewhat broader than the service provided by the Internet access provider in *Religious Technology Center,* the court nevertheless finds that Northwest only provided the means to copy, distribute or display plaintiff's works, much like the owner of a public copying machine used by a third party to copy protected material. Like a copying machine owner, Northwest did not actually engage in any of these activities itself. Accordingly, Northwest may not be held liable for direct infringement.

## 2. Contributory Infringement

■■■ Although Northwest did not directly infringe plaintiff's works, it may be liable for contributory infringement. Liability for contributory infringement will be imposed when a defendant, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another. *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264 (9th Cir.1996) (quoting *Gershwin Publishing Corp.,* 443 F.2d at 1162). Participation by the defendant must be substantial. *Apple Computer, Inc. v. Microsoft Corp.,* 821 F.Supp. 616, 625 (N.D.Cal.1993), *aff'd,* 35 F.3d 1435 (9th Cir. 1994).

■■■ Based on the evidence presented, it is unclear whether Northwest knew that any material on NAFED's Web Page was copyrighted and, if it did know, when it knew. The degree to which Northwest monitored,

controlled, or had the ability to monitor or control the contents of NAFED's Web Page is also unclear. These disputed issues of material fact preclude summary judgment for either party on this theory of liability.

### 3. Vicarious Liability

■■■■ Plaintiff does not claim, either in its complaint or briefs, that Northwest is vicariously liable for copyright infringement. Nevertheless, the court will briefly address this issue since Northwest seeks summary judgement in its favor on this theory of liability. "[A] defendant is vicariously liable for copyright infringement if it has 'the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'" *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1150 (7th Cir.1992) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). As mentioned above, the degree to which Northwest monitored, controlled, or had the ability to monitor or control the contents of NAFED's Web Page is unclear. However, it is undisputed that NAFED paid Northwest a one-time set-up fee of $20 and that since that time NAFED has paid Northwest a flat fee of $67.50 each quarter. It is also undisputed that the fee Northwest receives has never changed based on how many people visit NAFED's Web Page or what is accessed. In other words, NAFED's infringement did not financially benefit Northwest. Accordingly, Northwest cannot be held vicariously liable for NAFED's infringement. See *Religious Technology Center v. Netcom On–Line Communication Services., Inc.*, 907 F.Supp. 1361, 1376–77 (N.D.Cal. 1995).

In sum, Northwest may not be held liable for infringement on theories of direct infringement or vicarious liability. Disputed issues of material fact, however, preclude summary judgment in any party's favor on a theory of contributory infringement. Accordingly, plaintiff's motion for summary judgment against Northwest on Count I is denied, and Northwest's motion for summary judgment against plaintiff on Count I is granted with respect to direct infringement or vicarious liability, but denied with respect to contributory infringement.

### C. WILLFULNESS

■■■■ In several of its briefs, plaintiff argues that NAFED and Northwest willfully infringed its copyrights. In the Seventh Circuit, a finding of willfulness is justified if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right. *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511–12 (7th Cir.1994) (quoting *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1020 (7th Cir.1991)). A finding of willfulness, however, is also a factual determination. *International Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 380 (7th Cir.1988). Robisheaux claims he did not know that the clip art files he placed on NAFED's Web Page were copyrighted. Thus, a finding of willfulness against NAFED requires a determination of Robisheaux's credibility. Summary judgment on the issue is, therefore, inappropriate. *Lipton v. Nature Co.*, 71 F.3d 464, 472 (2d Cir.1995). The disputed issues of material fact that exist regarding Northwest's knowledge and Northwest's ability to monitor or control the contents of NAFED's Web Page also preclude a summary finding of willfulness against Northwest.

### III. UNFAIR COMPETITION (COUNT II)

Northwest seeks summary judgment against plaintiff on Count II on the grounds that plaintiff's common law claim for unfair competition is preempted by § 301 of the Act. Although NAFED has not formally filed a motion seeking summary judgment against plaintiff on Count II, it too argues that plaintiff's unfair competition claim is preempted by § 301 of the Act. Plaintiff responded to NAFED's argument by referring the court to its response to Northwest's argument. In light of the similarity of the arguments presented by Northwest and NAFED on this issue, the court will treat NAFED as having joined in Northwest's motion for summary judgment on Count II.

17. U.S.C. § 301 provides in relevant part:

On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). Thus, two conditions must be met for a right under state law to be preempted: (1) the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright and (2) the right must be equivalent to any of the rights specified in § 106. *Baltimore Orioles, Inc. v. Major League Baseball Players Association,* 805 F.2d 663, 674 (7th Cir.1986) (citations omitted). Plaintiff does not dispute that its clip art software is fixed in tangible form and comes within the subject matter of copyright. Rather, plaintiff argues that the right it asserts is broader than the rights specified in § 106.

"A right under state law is 'equivalent' to one of the rights within the general scope of copyright if it is violated by the exercise of any of the rights set forth in § 106." *Id.* at 676. In other words, "a right is equivalent to one of the rights comprised by a copyright if it 'is infringed by the mere act of reproduction, performance, distribution or display.'" *Id.* at 677 (quoting Melville B. Nimmer and David Nimmer, *Nimmer on Copyright,* § 1.01[B][I] ). To avoid preemption, the state claim must incorporate an "extra element" that "changes 'the nature of the action so that it is qualitatively different from a copyright infringement claim.'" *Computer Associates International, Inc. v. Altai, Inc.,* 982 F.2d 693, 716 (2d Cir.1992) (quoting *Mayer v. Josiah Wedgwood & Sons, Ltd.,* 601 F.Supp. 1523, 1535 (S.D.N.Y.1985)). Plaintiff argues that the inclusion and promotion of its clip art on NAFED's Web Page deceived the public as to the origin, affiliation and sponsorship of its clip art. Plaintiff therefore asserts that its unfair competition claim includes the extra element of public deception. In support of its position, plaintiff cites *Nash v. CBS, Inc.,* 704 F.Supp. 823 (N.D.Ill.1989) (finding claim under the Illinois Uniform Deceptive Trade Practices Act ("UDTPA") (which codified the common law of unfair competition) was not preempted under § 301 because the UDTPA's goal of consumer protection was distinct from the Act's goal of securing authors' intellectual property rights), *aff'd,* 899 F.2d 1537 (7th Cir.1990).

Plaintiff's argument is unpersuasive. Plaintiff's copyright infringement claim and unfair competition claim are based on the same conduct: the unauthorized copying and distribution of its clip art on NAFED's Web Page. There are no new allegations of likelihood of consumer confusion in Count II. In fact, there are no new allegations at all in Count II. The two paragraphs that make up Count II in its entirety read as follows: "[Plaintiff] realleges and incorporates herein paragraphs 1 through 32 of this Complaint. By virtue of the aforementioned acts, Defendants have engaged in unfair competition with [plaintiff]."

In any event, the inherent misrepresentation that accompanies the unauthorized copying and distribution of another's copyrighted work is not enough. Courts have refused to "conclude that an allegation of misrepresentation based solely on an alleged infringer's act of displaying, selling, or promoting the infringing work as his or her own creation, is sufficient to remove a state based claim from the preemptive reach of 17 U.S.C. § 301(a)." *FASA Corporation v. Playmates Toys, Inc.,* 869 F.Supp. 1334, 1361–62 (N.D.Ill.1994). "The fact that the defendants were selling the allegedly infringing works under their own names—and, hence, implicitly misrepresenting the origin of the works or causing confusion in the consuming public—did not alter the analysis .... this fact was not regarded as so qualitatively altering the nature of the underlying infringement as to take the state based claims out of the preemptive scope of copyright." *Id.* at 1363.

Generally, unfair competition claims premised on "passing off" are not preempted by the Act. *Id.* at 1362. Plaintiff, however, has not alleged "passing off" which "involves 'the selling of a good or service of one's own creation under the name or mark of another.'" *Web Printing Controls Co. Inc. v. Oxy–Dry Corp.*, 906 F.2d 1202, 1203, n. 1 (7th Cir.1990) (quoting *Smith v. Montoro*, 648 F.2d 602, 604 (9th Cir.1981)). The conduct plaintiff alleges is more like "reverse passing off" which "occurs" when a person "removes or obliterates the original trademark, without authorization, before 'reselling goods produced by someone else,'" *Web Printing*, 906 F.2d at 1203, n. 1 (quoting *Smith*, 648 F.2d at 605), or when someone simply "sells plaintiff's products as its own." *Waldman Publishing Corp. v. Landoll, Inc.*, 848 F.Supp. 498, 500–01 (S.D.N.Y.1994), *vacated in part on other grounds*, 43 F.3d 775 (2d Cir.1994). Claims premised on reverse passing off are preempted under the Act. *See FASA Corporation v. Playmates Toys, Inc.*, 869 F.Supp. 1334, 1361–64 (N.D.Ill.1994). The court in Nash—the sole case upon which plaintiff relies—did not adequately consider the distinction between passing off and reverse passing off. Thus, the two conditions for preemption are satisfied, and plaintiff's common law unfair competition claim is preempted under § 301 of the Act. Accordingly, Northwest and NAFED's motion for summary judgment against plaintiff on Count II is granted.

### CONCLUSION

Plaintiff's motion for summary judgment against NAFED on Count I is granted. Plaintiff's motion for summary judgment against Northwest on Count I is denied. Northwest's motion for summary judgment against plaintiff on Count I is granted with respect to direct infringement and vicarious liability, but denied with respect to contributory infringement. Northwest and NAFED's motion for summary judgment against plaintiff on Count II is granted. This matter is set for a report on status December 4, 1997, at 9:00 a.m., at which time the parties are directed to present a definitive discovery plan.